IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOLEEN YOUNGERS, as Personal
Representative of the Wrongful Death Estate of
Deven Chavez, and C.C., a minor child,

    Plaintiffs,

v.                                                                                 1:20-cv-00686-JCH-LF

BHC MESILLA VALLEY HOSPITAL, LLC,
SANJOY BANIK, M.D., and JOHN DOES 1-10,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
## RE APPROVAL OF SETTLEMENT

THIS MATTER comes before the Court on plaintiffs Joleen Youngers and minor child C.C.'s Unopposed Motion to Approve Minor Settlement, filed on September 22, 2022. Doc. 95. Senior United States District Judge referred this matter to me pursuant to 28 U.S.C. § 636(b)(1)(B), to conduct a fairness hearing and to perform any legal analysis required to recommend to the Court whether the settlement is in the best interests of the beneficiary and whether it should be approved. Doc. 97. The Court appointed Alysan Boothe Collins as Guardian Ad Litem ("GAL"), Doc. 96, and Ms. Collins filed her sealed report on October 28, 2022, Doc. 103. I held a fairness hearing on November 2, 2022, at which Brian G. Grayson and Samuel Isaiah Kane appeared on behalf of plaintiffs; Hays Doan appeared on behalf of defendant BHC Mesilla Valley Hospital, LLC, and Paul Cash and Wan Erh Chen appeared on behalf of defendant Sanjoy Banik, M.D. *See* Doc. 104 (clerk's minutes). Sarah Martin, the mother of C.C., and Deborah Mann, Dr. Banik's personal attorney, also were present. *See id.* After carefully considering the GAL report, the information provided by the GAL at the hearing, the

argument of counsel, and the testimony of Ms. Martin, I recommend that the Court approve the settlement.

### A. Legal Standard

The Court reviews settlements involving minor children for fairness. *See Thompson v. Maxwell Land-Grant and Railway Company,* 168 U.S. 451, 463–65 (1897). Before approving such an agreement, the Court must ensure that the interests of the child will be adequately protected. *See Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989) (courts have a general duty to protect the interests of minors); *see also United States v. Reilly*, 385 F.2d 225, 228 (10th Cir. 1967) (When interests of minors are at stake, the trial judge has an obligation to see that the children were properly represented by their representatives and by the Court.); *Salas v. Brigham*, No. 1:08-cv-01184-JB-RLP, 2010 WL 11601205, at *2 (D.N.M. Dec. 22, 2010) (unpublished) ("New Mexico courts and federal courts have traditionally supervised settlements benefitting minors and incapacitated adults, reviewing the proposed settlement to ascertain whether the agreement promotes the best interest of the minor or incapacitated beneficiary.").

In deciding whether to approve a settlement, the Court must determine whether the settlement satisfies the four factors set forth in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). These factors are: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; . . . (4) the judgment of the parties that the settlement is fair and reasonable." *Id*. The Court also must determine whether the settlement is in the best interests of the minor child. *See Garrick*, 888 F.2d at 693.

**B. Factual Background**

This case arose from the death of Deven Chavez while in the care of Mesilla Valley Hospital ("MVH"). Plaintiffs[1] Jolene Youngers, as Personal Representative of the Wrongful Death Estate of Deven Chavez, and C.C., Mr. Chavez's minor child and sole heir, brought tort claims against all defendants for negligence and wrongful death, negligent failure to protect, loss of consortium and punitive damages. Plaintiffs also brought a *respondeat superior* claim against MVH. Mr. Chavez was 39 years old at the time of his death on July 30, 2018. C.C. was 8 years old at the time of the incident.

Deven Chavez was referred to MVH on July 24, 2018, by his treating psychiatric nurse practitioner due to suicidal ideation, specifically expressing a desire to hang himself. He was taken to MVH by a Las Cruces police officer and admitted. Dr. Banik, an employee of MVH and a board-certified psychiatrist, was Mr. Chavez's attending physician while at MVH from July 24 through July 26, 2018. On July 26, Mr. Chavez was found in his room sitting on the floor behind the door with his pants around his neck. CPR was administered and he was transferred to Mountainview Regional Medical Center. Mr. Chavez did not regain consciousness, and on July 30, 2018, his family discontinued life support. At the time of his death, Mr. Chavez had one heir, his minor daughter C.C., now 12 years old.

**C. Analysis**

At the fairness hearing on November 2, 2022, the GAL presented her report, and Sarah Martin testified. Counsel also made their presentations and answered questions from the Court. I have considered the evidence and argument presented during the hearing on November 2, 2022.

---

[1] At the hearing, C.C. still was named as a plaintiff, but Mr. Grayson represented that he was in the process of moving to dismiss her individual claims. Because C.C. is the sole beneficiary of Mr. Chavez's estate and still was in the case at the time of the hearing, this order refers to two "plaintiffs" rather than a single "plaintiff."

I also have considered the GAL report and the basic terms of the proposed settlement agreements, the specific terms of which are contained in sealed *ex parte* exhibits.[2] *See* Docs. 107–10. I recommend that the Court find that the proposed settlement satisfies the four *Jones* factors, and that the settlement is in the best interests of the minor child.

1. *Whether the Proposed Settlements were Fairly and Honestly Negotiated*

The parties began their negotiations at a private mediation on April 5, 2022, with Denise M. Torres, an experienced litigator and mediator. *See* Doc. 83. Although the case did not settle at the mediation, the parties continued to discuss settlement through the attorneys, and plaintiffs ultimately reached separate agreements with each defendant. *See id.*; Doc. 93. Ms. Martin testified that she understood and participated, along with Ms. Youngers, in the formal mediation, and that she continued to participate in the ongoing negotiations. She understood and agreed to the final settlement amounts after consulting with her counsel. Ms. Martin testified that she believed the settlements were fair and reasonable, that she was not threatened or coerced into agreeing to the settlement amounts, and that she wanted the Court to approve the overall settlement. She also testified that she understands that the settlement would resolve all of C.C.'s claims, both as an individual and as the sole beneficiary to the estate of Deven Chavez, against both MVH and Dr. Banik. Ms. Martin also understands that the settlement proceeds will be placed into a structured annuity for C.C.'s sole benefit, and that C.C. will not have access to the funds except as outlined in Attachment A. Doc. 106. Given these facts, I recommend that the Court find that the settlement was honestly and fairly negotiated.

---

[2] A material term of each settlement agreement is that the settlement amount will remain confidential, not only with respect to the public, but also with respect to the other defendant. Consequently, only the plaintiffs know how much each defendant is contributing to the settlement, and the settlement amounts are set forth in exhibits that are sealed and are only available to the plaintiffs and the pertinent defendant.

2. *Whether Serious Questions of Law and Fact Place the Outcome of this Litigation in Doubt*

Having heard from the parties and having reviewed the GAL's report, I also recommend that the Court find that serious questions of law and fact place the outcome of this litigation in doubt. Plaintiffs' First Amended Complaint, filed on June 18, 2020, and subsequently removed to this Court, brought claims against MVH and Dr. Banik for negligence and wrongful death, negligent failure to protect, a *respondeat superior* claim against MVH, and a loss of consortium claim by C.C. *See* Doc. 1–5. Plaintiffs sought compensatory and punitive damages, and other damages, against both defendants. *See id.* As explained in detail in the GAL report, both defendants vigorously disputed liability and also argued that even if plaintiffs succeeded in proving liability, the recovery of compensatory damages could be quite limited. Plaintiffs' attorneys made plain that they understood that there were risks associated with proceeding to trial, including the risk that they might not recover anything. Ms. Martin testified that she understood the risks of going to trial, and that her attorneys had explained those risks to her. She understood that at trial, although C.C. perhaps could recover more than the settlement amounts, she also could recover nothing, or less than the settlement amounts. Based on the positions of the parties as outlined in the GAL report, I agree that there are serious questions regarding defendants' liability and the damages that C.C. might recover if the case went to trial. I recommend that the Court find that there are serious questions of law and fact that placed the outcome of this litigation in doubt.

3. *Whether the Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation*

I further recommend that the Court find that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. Mr. Grayson confirmed that this case would have been very expensive to try, and that they already had incurred considerable expenses in getting the case to where it is now. *See* Doc. 107 (sealed

*ex parte* Exh. 1). He emphasized that the risk of not recovering anything was a possibility, and that the settlement provided substantial assistance for C.C. in her early adulthood. Ms. Martin testified that she was aware of the risks of not settling the case, and that she believed it was in C.C.'s best interests to resolve the case now, knowing that the settlement would help C.C. pay for college and living expenses once she turns 18. The GAL also testified that she believed it was in the best interest of C.C. to settle the case, given the uncertainty of any future recovery if the case went to trial.

The allocation of the funds also is fair and reasonable. As shown in sealed *ex parte* exhibits 1 and 2,[3] once the attorney's fees and costs are paid, a structured annuity will be purchased which will ensure that C.C. will receive lump sum payments once per year, and regular monthly payments to help her pay for college tuition and expenses in her early adulthood. *See* Docs. 107–08. She will receive a larger lump sum payment upon turning 30, at which time Ms. Martin is hopeful the payment will help C.C. make a down payment on a home, or if not, that C.C. will have the maturity to use the payment wisely. Ms. Martin also testified that she understands these funds may be used only for C.C.'s benefit. The funds will be paid as set forth in Attachment A, which will be filed under seal as discussed below.

    4. *Attorney's Fees and Costs*

The GAL report also reviewed the attorney's fees that will be paid out of the settlement funds. The fee agreement provides for a percentage of the settlement proceeds which is comparable to or below what typically is charged in other personal injury cases. The GAL

---

[3] The GAL proposed two structured annuity options, but Ms. Martin's preferred option was Option A. Ms. Martin preferred that the final lump sum payment be made when C.C. is 30 rather than 25, hoping and expecting that by age 30, C.C. will have the maturity to use the funds wisely. The two options are otherwise fairly similar, and I recommend that the Court approve Ms. Martin's preferred option.

reviewed the work that plaintiffs' attorneys performed on the case, and she viewed the attorney's fees and costs as fair and reasonable. I recommend that the Court find that the attorney's fees are reasonable and should be paid from the settlement funds as described in sealed *ex parte* exhibit 1. *See* Doc. 107. The three parties have agreed to split the GAL's fees, and I recommend that the Court also order that payment.

        5. *Whether the Settlement is Fair and Reasonable and in the Minor Child's Best Interests*

All counsel, the GAL, and Ms. Martin testified that they believed the settlement is fair and reasonable and in C.C.'s best interests, and I agree. The *Jones* factors are satisfied. I recommend that the Court approve the proposed settlements between plaintiffs and each defendant, and that the Court find that the settlement is in C.C.'s best interests.

    **D. Conclusion**

In summary, I recommend that the Court approve the allocation and distribution of the settlement proceeds and the payment of plaintiffs' attorney's fees as outlined in sealed *ex parte* exhibit 1. I also recommend that payment to C.C. be used to purchase a structured annuity as set forth in Attachment A to this PF&RD. Doc. 106. I further recommend that the Court release Ms. Collins from her duties as guardian ad litem, and that the three parties each pay one-third of her fees. I further recommend that the Court order the parties to file closing documents within 30 days of the date of the Court's order approving the settlement, absent a written motion showing good cause for an extension.

The details of the settlement, including the settlement amounts, are confidential, and I agree confidentiality is appropriate. Confidentiality is a material term of the settlements with each defendant. Moreover, the settlement involves the claims of a minor child and is in payment for damages resulting from her father's suicide while in defendants' care. Confidentiality will

protect the minor child from individuals who seek to take advantage of her monetarily. Attachment A to this PF&RD is a copy of the payment terms and the annuity schedule that I recommend that the Court impose. Attachment A will be filed separately, under seal, to maintain the confidentiality of the settlement's terms. Attachment A and the details regarding the amount of the settlement shall not be disclosed to anyone other than the plaintiffs, their counsel and staff, the GAL, and the entities assisting in establishing the annuity, absent prior Court order. I recommend that the Court find that the structured settlement annuity set forth in Attachment A is in C.C.'s best interest and its terms are material, integral and inseparable elements of the Court's approval of the settlement and are essential to this Court's determination of fairness. Pursuant to the Structured Settlement Protection Act, NMSA 1978 §39-1A-4(C) and this Court's continuing jurisdiction over this matter, I recommend that this Court prohibit the transfer of the structured settlement payment rights, as reflected in Attachment A, at any time. I further recommend that the Court find that any attempt by a third-party to access or assign said funds or payments designated for annuity investment will be considered a violation of this Court's order and that any petition for the transfer of the structured settlement payment rights must be filed in this Court and cause of action.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id*. **In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge

8